## CIRCUIT COURT OF THE CITY OF LYNCHBURG

Commercial Union Ins. Co.

v.

Travelers Indemnity Co.
and Cynthia L. McGee

October 29, 1979

By JUDGE WILLIAM W. SWEENEY

The issue in this declaratory judgment suit is whether a limitation of liability clause in a garage liability insurance policy applies to uninsured motorist coverage in light of the policy language and Virginia Code Section 38.1-381. The insurance companies, Commercial Union Insurance Company and Travelers Indemnity Company, seek a court determination as to which company should provide primary coverage for the accident in question. A civil lawsuit arising from the accident has been filed in this court but has not been tried. (*Cynthia McGee* v. *John Doe*).

There is no dispute as to the facts. Commercial Union issued a policy of garage liability insurance to Richard Woody Motors in Lynchburg. Cynthia McGee took her automobile to the Company for repairs. Richard Woody Motors leased or loaned her a 1976 Buick automobile for temporary use. She was run off the road and injured by an alleged unknown vehicle on January 11, 1977, in this City. At the time, she was driving the Buick which had been loaned her. Travelers has a liability policy on the car owned by Cynthia McGee. Commercial Union has a garage liability policy on the Buick involved in the accident.

Both policies contain "excess insurance" clauses which are fairly clear. The insurance companies want to know which one provides primary coverage and must defend the civil action arising from this accident.

Clearly, if the "other driver" in the accident had been identified, Travelers would have to afford primary coverage. This would be required by the statute and the limitation of liability endorsement in the Commercial Union garage policy.

Should it make a difference that the "other driver" was unknown? Logically, the answer is no. When the Legislature provided for issuance of garage policies with limited coverage, it was speaking in terms of liability coverage and protection. There is no sound reason for treating uninsured motorist cases differently from others.

The focal points are two: endorsement A375 in the Commercial Union policy and Virginia Code Section 38.1-381 as amended.

The policy endorsement reads as follows:

> 1. If there is other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer and the limits of such insurance are sufficient to pay damages including damages for care and loss of services because of bodily injury, or property damage up to the amount of the applicable financial responsibility limit, no damages including damages for care and loss of services because of bodily injury, or property damage are collectible under this policy.

While it is true, as counsel for Travelers argues, that this endorsement does not specifically mention uninsured motorist coverage, the intent of the endorsement is clear. By its express wording, it provides that if there is other valid and collectible insurance, whether primary, excess or contingent, available to McGee, such other insurance would be primary coverage under the circumstances of this case. There is other valid and collectible insurance available to Cynthia McGee under her own policy issued by Travelers. Uninsured motorist insurance is "insurance." Furthermore, it is liability insurance coverage although it differs in form from regular liability coverage. The endorsement in question could have specifically mentioned uninsured motorist coverage but it is not inoperative because it did not.

The second focal point is the Virginia Statute, Section 38.1-381 as amended. The history of this statute,

including the amendments and Virginia Supreme Court opinions interpreting it, is interesting but not necessary in a resolution of this case. (See historical development of § 38.1-381 in Washington & Lee Research Group memorandum.) On January 4, 1977, when this accident occurred, sub-section (a3) of the statute made the limitation of liability provision applicable to "leased or loaned" cars under garage policies. In fact, the language is mandatory. It states that such garage policies as here issued by Commercial Union *shall* contain a provision that the *insurance coverage* afforded to a driver of a loaned vehicle under the garage policy "shall not be applicable if there is any other valid and collectible insurance applicable to the same loss." "Insurance coverage" is a broad term. It does not exclude uninsured motorist insurance coverage which, like liability insurance, protects the injured party.

The undisputed facts of this case fit the statutory language. There was and is, in fact, other "insurance coverage" available to McGee for this accident through Travelers. The fact that it is insurance coverage under the uninsured motorist endorsement of the Traveler's policy rather than insurance coverage under the standard liability provisions does not change the result. Excess insurance clauses as to U. M. coverage are valid. *State Farm* v. *United Services*, 211 Va. 133, 176 S.E.2d 327 (1970). Furthermore, Section 38.1-381(b) requires that automobile insurance policies issued in this State contain an uninsured motorist endorsement or provision. Therefore, the language of (a3) referring to "such policy or contract of bodily injury liability insurance" necessarily implies the inclusion of all endorsements required by statute.

Section 38.1-381 is a comprehensive statute. In its title it mentions both liability insurance and uninsured motorist coverage. The fact that (a3) does not specifically mention uninsured motorist coverage does not make the statute ambiguous. The legislative intent is clear. Whenever possible, this intent should be recognized and given effect by the courts. Rules of construction are only helpful in seeking intent. If from a fair reading of the statute as a whole, the language and intent are clear, rules of construction should be avoided. Such rules were never intended to confuse intent but to clarify it.

Principally, arguments for Travelers boil down to the omission of any specific uninsured motorist language in parts of the statute and in endorsement A375 of the Commercial Union policy. The fallacy of such argument is that liability insurance and uninsured motorist insurance are all a part of the same contract and must be read and construed together. A U.M. endorsement is not a separate contract of insurance. It is a part of the original policy of insurance. As an endorsement to the policy, it must be read and interpreted with all other parts of the policy. Endorsement A375 to the Commercial Union policy states that the endorsement modifies such insurance as is afforded by the policy. The U.M. endorsement on both policies provides that such endorsement is subject to all of the provisions of the endorsement *and to the applicable provisions of the policy.* As the Fourth Circuit Court of Appeals said in *Nationwide* v. *Akers*, 340 F.2d 150 (1965), insurance contracts, like other contracts, must be read and construed as a whole and not piecemeal:

> We repeat that the endorsement (U.M. endorsement) standing alone does not constitute the contract of insurance issued by Nationwide to Kessler; it is only a part of the contract. 340 F.2d at 156.

At my request, a comprehensive memorandum of the law involved in this case was prepared by the Washington and Lee Legal Research Association. I informed counsel that I intended to ask for such a memorandum. I did not request any conclusions.

In accordance with the Judicial Canons of Ethics, the original of the memorandum has been filed with the papers in this cause and a copy of same was mailed to both counsel of record on October 17, 1979. This opinion was not completed until counsel had been given an opportunity to reply to the memorandum.

For the reasons stated, I rule that Travelers must provide primary coverage for this accident.